## AACHEN & MUNICH FIRE INS. CO. v. GUARANTY TRUST CO. OF NEW YORK.

District Court, S. D. New York. July 1, 1926.

1. Banks and banking ⬅188½—Direction to bank to remit money to Germany "to-day" held to require remittance within reasonable time only.

Plaintiff's direction to a bank to remit money to Germany "to-day" *held* to require such remittance only within a reasonable time.

2. Judgment ⬅181—When reasonable time for performance of contract expired, starting running of statute, held substantial issue, precluding summary judgment (Civil Practice, Act N. Y. §§ 27, 28).

Under Civil Practice Act N. Y. §§ 27, 28, providing that time of disability of party to sue because of his being an alien citizen or subject of a country at war with the United States shall be excluded in computing time under statute of limitations, but that the disability must exist when the right of action accrued, where a contract requiring defendant to remit money to Germany within a reasonable time was made March 26, 1917, whether a reasonable time had elapsed before April 6, when declaration of war made the remittance impossible and

right of action had in consequence accrued for breach of contract *held* a substantial issue under the facts and circumstances which may be shown, precluding summary judgment.

At Law. Action by the Aachen & Munich Fire Insurance Company against the Guaranty Trust Company of New York. On motion by plaintiff for summary judgment on the pleadings. Denied.

See, also, 24 F.(2d) 465; 56 App. D. C. 314, 13 F.(2d) 286.

Hartwell Cabell, of New York City (Milton B. Ignatius and Joseph S. Catalano, both of New York City, of counsel), for plaintiff.

Stetson, Jennings, Russell & Davis, of New York City (William C. Cannon and David E. Hudson, both of New York City, of counsel), for defendant.

WINSLOW, District Judge. This is a motion made by plaintiff for summary judgment on the pleadings. The action was brought to recover the sum of $43,137.72, with interest, from March 27, 1917. The plaintiff is an insurance corporation; its main office being at Aachen, Germany. Prior to the war, it conducted business also in the United States.

On March 26, 1917, plaintiff's manager in the United States asked the defendant to remit, that day, to the plaintiff, at Aachen, Germany, 250,000 marks at .69, or better, and charge the equivalent against the special foreign account of the plaintiff. Thereupon the defendant issued a memorandum to the plaintiff, showing $43,125 as the equivalent of marks ordered to be transmitted, and $12.72, wireless expense. Upon the issuance of a memorandum to the plaintiff, the defendant debited plaintiff's account with $43,137.72.

A state of war was declared between the United States and Germany on April 6, 1917.

It appears that the defendant, upon receiving instructions to transmit the marks, attempted to send a wireless message to its correspondent in Berlin, but the message was intercepted by the United States authorities, who had taken over the radio station. The message was never actually transmitted. A written confirmation of the wireless message was also placed in the mails by the defendant, but that also was intercepted by the United States authorities. Neither the wireless message, nor its mail confirmation, ever reached its destination.

On June 4, 1918, the defendant, pursuant to a demand, paid over to the Alien Proper-

ty Custodian $36,019.70, being the balance of the plaintiff's deposit account with the defendant after the deduction of the sum of $43,137.72, which the parties, at that time, assumed had been transmitted to Germany.

On June 24, 1918, defendant advised the United States manager of the plaintiff that it had turned over to the Alien Property Custodian the sum aforesaid as the balance of the special foreign account of the plaintiff; this being the balance then remaining after the deduction of $43,137.72 thought to be transmitted.

It was not, however, until October 13, 1922, according to the plaintiff, that the facts became known to the plaintiff and its United States manager, following a correspondence instituted by the plaintiff in or about July, 1922, in the course of the plaintiff attempting to check its former assets in the United States. Thereupon, under date of November 23, 1922, the plaintiff wrote to the defendant:

"We wish no remittance to be made to us from your side and as the order to effect the transfer in question appears to be still open, we beg to formally withdraw same."

Thereupon plaintiff made demand upon the defendant, and, upon its denial, this action was instituted.

The facts recited appear in the pleadings and affidavits submitted on the motion. The defendant, after denying the alleged contracts, admitting, however, that it debited the plaintiff's account in the sum specified and admitting that said sum had not been transmitted by it to the plaintiff in Germany, further sets up a number of affirmative defenses.

It is quite manifest that, if any one of these affirmative defenses raises a genuine and substantial issue, a summary judgment is quite improper.

One of the affirmative defenses is that the cause of action is barred by the statute of limitations.

The action is based on an alleged breach of contract. The Civil Practice Act provides (section 48) that certain actions "must be commenced within six years after the cause of action has accrued," including "an action upon a contract obligation or liability express or implied, except a judgment or sealed instrument. * * *"

[1] Exhibit A, of the affidavit filed in support of this motion, alleges a contract to transfer a foreign credit "to-day by wireless." "To-day" was March 26, 1917. The contract, if literally and strictly interpreted, was breached on March 26th. I think, however, that the better interpretation is that, while the word was "to-day," the transmission, within the contemplation of the parties, must have had regard to the method employed and was to be within a reasonable time. As to what is a reasonable time in a given case is a question of fact for the jury.

The action was not commenced until February 9, 1924, nearly seven years after the transaction in question.

[2] What was the effect of war on the rights of the parties? Section 27 of the Civil Practice Act clearly recognizes that a person may be under a disability to sue by reason of the existence of a state of war.

"Sec. 27. *Effect of War on Right of Alien.* Where a person is disabled to sue in the courts of the state by reason of either party being an alien subject or citizen of a country at war with the United States, the time of the continuance of the disability is not a part of the time limited for the commencement of the action."

The limitation of the war disability is set forth in section 28 of the Civil Practice Act.

"Sec. 28. *Disability Must Exist When Right Accrues.* A person cannot avail himself of a disability unless it existed when his right of action or of entry accrued."

The cause of action accrued on March 26th, or within a reasonable time thereafter. If the period from March 26, 1917, to April 6, 1917, when a state of war was declared, was a reasonable time, the cause of action then accrued and the statute began to run. In either event, the defense of the statute of limitations raises a substantial issue.

It is therefore unnecessary to consider, for the purposes of this motion, any of the other questions involved.

Motion for summary judgment denied.